**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

DOLLS KILL, INC., a California
Corporation,

      Plaintiff,                                 No.

v.

THE PARTNERSHIPS AND             **Jury Demanded**
UNINCORPORATED ASSOCIATIONS
IDENTIFIED IN SCHEDULE "A",

      Defendants.

## COMPLAINT

    Plaintiff, Dolls Kill, Inc. ("Dolls Kill"), by and through its undersigned attorneys, hereby

prays to this honorable Court for relief based on the following:

## INTRODUCTION

    1.     This action has been filed by Plaintiff in attempt to combat e-commerce store

operators who trade upon Plaintiff's reputation and goodwill by making, using, offering for sale,

selling and/or importing into the United States for subsequent sale or use that same unauthorized

and unlicensed products which infringe on Plaintiff's copyrights (collectively, the "Infringing

Products"). Exemplars of the Infringing Products are shown in **Exhibit B** attached hereto. A true

and correct copy of Plaintiff's copyrighted designs are attached hereto as **Exhibit A** (the "Subject

Designs").

    2.     Dolls Kill is a company that creates various fun and unique designs (the "Subject

Designs") and later incorporates the Subject Designs on products offered for sale, such as apparel,

accessories, and home décor.

3.      The Defendants create numerous Internet stores and design them to appear to be selling genuine products copyrighted by Plaintiff, while selling inferior imitations of Plaintiff's Designs. The Defendant Stores share unique identifiers, such as design elements and similarities of the infringing products offered for sale, establishing a logistical relationship between them and suggesting that Defendants' illegal operations arise from the same transaction, occurrence, or series of transactions and occurrences. Defendants attempt to avoid liability by going to great lengths to conceal both their identities and the full scope and interworking of their illegal infringing operation. Plaintiff is therefore forced to file this action to combat Defendants' infringement of its Subject Designs, and to protect unknowing customers from purchasing unauthorized products over the Internet.

4.      This action has also been filed to combat the e-commerce store operators who are infringing on Plaintiff's original copyrighted photographs ("Subject Photographs") by displaying, copying, or otherwise distributing the Subject Photographs in commercial advertisements of the Infringing Products ("Offending Advertisements"). True and correct screen captures of the Defendants Offending Advertisement alongside Plaintiff's original Subject Photographs is shown in **Exhibit D** attached hereto. Exhibit D is a non-exclusive list of exemplars of Defendants' use of Dolls Kill's Subject Photographs.

5.      Dolls Kill brings this action for willful copyright infringement and piracy committed for purposes of commercial advantage or private financial gain by the reproduction or distribution, including by electronic means, of one or more copies of copyrighted works in violation of 17 U.S.C. §501, and for all the remedies available under the Copyright Act 17 U.S.C. § 101, *et seq*.

6.     This unauthorized usage constituted copyright infringement, amongst other things, as set forth below.

## JURISDICTION AND VENUE

7.     This Court has original subject matter jurisdiction over the claims in this action arising under the Copyright Act of 1976, Title 17 U.S.C., §§ 101, *et seq*., under 28 U.S.C. §§ 1331 and 1338(a), (b).

8.     Defendants are subject to personal jurisdiction in this district because they purposefully direct their activities toward and conduct business with consumers throughout the United States, including within the state of Illinois and this district, through at least the internet-based e-commerce stores accessible in Illinois.

9.     Defendants are further subject to personal jurisdiction in this district because each Defendant directly targets consumers in the United States, including in Illinois, through at least the fully interactive commercial Internet stores operating under the Defendant domain names and/or the Online Marketplace Accounts identified in **Schedule A** attached hereto (collectively, the "Defendants" or "Defendant Internet Stores"). Specifically, the Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products infringing Plaintiffs copyrighted designs. Each of the Defendants has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, accepts payment in United States Dollars, and on information and belief, has sold infringing products to Illinois residents. Each of the Defendants are committing tortious and illegal activities directed towards the state of Illinois and causing substantial injury in Illinois, and Plaintiff's claims arise out of those activities.

10.     Alternatively, Defendants are subject to personal jurisdiction in this district under Federal Rule of Civil Procedure 4(k)(2) because (i) Defendants are not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

11.     Venue is proper in this district under 28 U.S.C. § 1400(a) because Defendants and their agents are subject to the court's personal jurisdiction and therefore reside in this judicial district or may be found here.

12.     Venue in this judicial district is otherwise proper under 28 U.S.C. § 1391(b)(3) because Defendants are subject to the court's personal jurisdiction and not a resident in the United States and therefore there is no district in which any action may otherwise be brought.

## PARTIES

13.     Dolls Kill is a California corporation with its headquarters located in California and doing business throughout the United States and within Illinois.

14.     Dolls Kill owns the copyrights for the Subject Designs identified in **Exhibit A** that are the subject of this action and is in the business of developing, obtaining, marketing, selling, creating, and distributing products featuring its original Subject Designs.

15.     Dolls Kill creates original artwork and designs and sells products incorporating its original designs. Dolls Kill sells thousands of products featuring its original designs and artwork every year.

16.     Dolls Kill owns the copyrights for the original Subject Photographs identified in Exhibit D that are the subject of this action and is in the business of creating and developing original photography to market and advertise its products, including those bearing the original Subject Designs.

17.     Defendants have advertised their inferior Infringing Products with Dolls Kill's Subject Photographs in their advertisements, and online listings. Specifically, several Defendants continuously use original Subject Photographs depicting genuine Subject Products, in order to pass off the Infringing Products as Dolls Kill's products, e.g. by using, copying, and reproducing the Subject Photographs, in advertisements ("Offending Advertisements") for Infringing Products, suggesting to the general public that Defendants are authorized retailers of Dolls Kill's Products bearing the Subject Designs. They are not.

18.     Defendants' Offending Advertisements reproducing, displaying, copying or otherwise distributing the Subject Photographs violate Dolls Kill's copyrights in those Subject Photographs.

19.     Dolls Kill has not granted a license or any other form of authorization to Defendants with respect to their use of either the Subject Designs or Subject Photographs.

20.     Defendants have the capacity to be sued under Federal Rule of Civil Procedure 17(b).

21.     The Defendants in **Schedule A** (collectively, "Defendants") are individuals and business entities who, upon information and belief, reside primarily in foreign jurisdictions. The Defendants of unknown makeup own and/or operate one or more Defendant Internet Stores identified in **Schedule A** under seller aliases identified therein and other seller aliases not yet known to Plaintiff.

22.     Defendants conduct business throughout the United States, including within Illinois and in this District, through the operation of fully interactive commercial websites and online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has, upon information and belief, sold, offered for sale, and continues

to sell, products featuring the Subject Design to consumers within the United States and this District.

23.     Defendants have purposefully directed some portion of their illegal activities towards consumers in the state of Illinois through the advertisement, offer to sell, sale, and/or shipment of Infringing Products to residents in the State.

24.     Upon information and belief, Defendants may have engaged in fraudulent conduct providing false and/or misleading information to the Internet based e-commerce platforms or domain registrar where they offer to sell and/or sell Infringing Products.

25.     Upon information and belief, Defendants will likely continue sell and offer for sale products featuring Dolls Kill's intellectual property, namely products featuring in whole, or in part, the Subject Designs, unless preliminarily and permanently enjoined.

26.     Defendants use their Internet-based businesses to infringe the intellectual property rights of Dolls Kill and others.

27.     Defendants, through the sale and offer to sell infringing products, are directly, and unfairly, competing with Dolls Kill's economic interests in the state of Illinois and causing Dolls Kill harm and damage within this jurisdiction.

28.     The natural and intended byproduct of Defendants' actions is the erosion and destruction of the goodwill associated with Dolls Kill's intellectual property rights and the destruction of the legitimate market sector in which it operates.

29.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Dolls Kill's intellectual property rights, including Dolls Kill's exclusive right to use and license such Subject Designs.

30.     In recent years, Dolls Kill identified numerous fully interactive, e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Infringing Products to consumers in this Judicial District and throughout the United States. According to U.S. Customs and Border Protection (CBP), most infringing products now come through international mail and express courier services (as opposed to containers) due to increased sales from offshore online infringers. U.S. Customs and Border Protection, Intellectual Property Right Seizure Statistics, FY *2021 (https://www.cbp.gov/sites/default/files/assets/documents/2022-Sep/202994 - FY 2021 IPR Seizure Statistics BOOK.5 - FINAL %28508%29.pdf)*, at 28 attached hereto as **Exhibit E**. The 2021 report noted that nearly 90 percent of all intellectual property seizures occur in the international mail and express environments with the majority of seized goods originating from Asia. *Id; see also, The Counterfeit Silk Road: Impact of Counterfeit Consumer Products Smuggled Into the United States* prepared for The Buy Safe America Coalition by John Dunham & Associates.

31.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to "routinely use false or inaccurate names and addresses when registering with these e-commerce platforms." **Exhibit F**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, 40 NW. J. INT'L L. & BUS. 157, 186 (2020); *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (Jan. 24, 2020), attached as **Exhibit G** and finding that on "at least some e-commerce platforms, little identifying information is necessary for [an infringer] to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Infringers hedge against the risk of being caught and having their websites taken down

from an e-commerce platform by preemptively establishing multiple virtual storefronts. Id. at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, infringers can have many different profiles that can appear unrelated even though they are commonly owned and operated. Id. at p. 39. Further, "E- commerce platforms create bureaucratic or technical hurdles in helping brand owners to locate or identify sources of [infringement]." **Exh. F** at 186-187.

32.     Defendants conduct business throughout the United States, including within Illinois and this Judicial District, through the operation of fully interactive, commercial online marketplaces operating under the Defendant Internet Stores. Each Defendant targets the United States, including Illinois, and has offered to sell, and, on information and belief, has sold and continues to sell the Infringing Products to consumers within the United States and including Illinois. Non-inclusive exemplars of these Infringing Products being offered for sale and sold by Defendants are shown in **Exhibit B** attached hereto.

33.     Upon information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use products that infringe directly and/or indirectly the Subject Designs in the same or series of transactions or occurrences.

34.     Specifically, each of the Defendants have been involved in the same series of occurrences underlying the infringing activities, which this claim arises from. The series of occurrences include the manufacture, offer for sale, and sale of the Infringing Products. For example, Defendants all sell and/or offer for sale the same Infringing Products with minor variations, and use similar, if not identical, product images, descriptions, and videos as shown in **Exhibit B**.

35.     Defendants each use the same tactics to conceal their identities, which make it virtually impossible for Plaintiff to learn Defendants' true identities and the exact interworking of their network. Indeed, Defendants go to great lengths to conceal their identities, often using multiple fictitious names and addresses to register and operate their network of Defendant Internet Stores.

36.     On information and belief, Defendants regularly create new online marketplace accounts on various platforms using identifies listed in **Schedule A**, as well as other unknown fictitious names and addresses. Such Defendant Internet Store registration patterns are one of many common tactics used by Defendants to conceal identities and avoid being shut down.

37.     E-commerce store operators like Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such seller alias registration patterns are one of many common tactics used by e-commerce store operators like Defendants to conceal their identities and the full scope and interworking of their operation and to avoid being shut down.

38.     The Defendant Internet Stores contain numerous similarities, including the same product images and videos, the same payment methods, metadata, illegitimate SEO tactics, lack of contact information, identical or similarly priced items and discounts, the same incorrect spelling, the use of the same text and keyword stuffing, and the same descriptions.

39.     Defendants in this case and other similar cases will often register new online marketplace accounts or move funds to offshore accounts once they receive notice of a lawsuit. The Defendants in this case and other similar cases receive notice of lawsuits through online forums such as sellerdefense.cn, QQ.com chat rooms, kaidianyo.com, and kuajingvs.com where

those within the network notify Defendant Internet Sellers when a lawsuit is filed and discuss tactics for evading detection, pending litigation, and potential new lawsuits.

40.     If Defendants provide additional credible information regarding their identities, Dolls Kill will take appropriate steps to amend the Complaint.

41.     Infringers, such as Defendants, typically operate multiple credit card merchant accounts and PayPal accounts behind layers of payment gateways so that they can continue operation in spite of Plaintiff's enforcement efforts, such as takedown notices. On information and belief, Defendants maintain offshore bank accounts and regularly move funds from their PayPal accounts or other financial accounts to those offshore bank accounts outside this Court's jurisdiction.

42.     Defendants, without any authorization or license, continue to knowingly and willfully offered for sale, sold, advertised, and/or imported into the United States for subsequent resale or use products that infringe directly and/or indirectly the Subject Designs and Subject Photographs and continue to do so via the Defendant Internet Stores.

43.     Defendants' infringement of the Subject Designs and Subject Photographs in connection with the offering to sell, selling, or importing of the Infringing Products, including the offering for sale and sale of Infringing Products into Illinois, is irreparably harming Dolls Kill.

44.     Dolls Kill is informed and believes and thereon alleges that at all times relevant hereto each of the Defendants were the agent, affiliate, officer, director, manager, principal, alter-ego, and/or employee of the remaining Defendants and was at all times acting within the scope of such agency, affiliation, alter-ego relationship and/or employment; and actively participated in or subsequently ratified and adopted, or both, each and all of the acts or conduct alleged, with full knowledge of all the facts and circumstances, including, but not limited to, full knowledge of each

and every violation of Dolls Kill's rights and the damages to Dolls Kill proximately caused thereby.

## <u>JOINDER OF DEFENDANTS IN THIS ACTION IS PROPER</u>

45.     Defendants are promoting, selling, offering for sale and distributing goods bearing identical or confusingly similar imitations of Dolls Kill's Subject Designs within this District.

46.     Joinder of all Defendants is permissible under Fed. R. Civ. P. 20(a)(2), permitting joinder of persons in an action where any right to relief is asserted against defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and any question of law or fact common to all defendants will arise in this action.

47.     Joinder of the multiple Defendants is permitted because Dolls Kill asserts rights to relief against these Defendants jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and common questions of law or fact will arise in the action.

48.     Joinder of the multiple Defendants serves the interests of convenience and judicial economy, which will lead to a just, speedy, and inexpensive resolution for Dolls Kill, Defendants, and this Court.

49.     Joinder of the multiple Defendants will not create any unnecessary delay, nor will it prejudice any party. On the other hand, severance is likely to cause delays and prejudice Dolls Kill and Defendants alike.

50.     Joinder of the multiple Defendants is procedural only and does not affect the substantive rights of any defendant listed on **Schedule A** hereto.

51.    This court has jurisdiction over the multiple Defendants. Venue is proper in this court for this dispute involving the multiple Defendants.

52.    Dolls Kill's claims against the multiple Defendants are all transactionally related.

53.    Defendants' actions are logically related. All Defendants are engaging in the same systematic approach of establishing online storefronts to redistribute illegal products from the same or similar sources while maintaining financial accounts that the Defendants can easily conceal to avoid any real liability for their actions.

54.    All Defendants undertake efforts to conceal their true identities from Plaintiff to avoid accountability for their activities.

55.    All Defendants use payment and financial accounts associated with their online storefronts or the online platforms where their online storefronts reside.

56.    All Defendants use their payment and financial accounts to accept, receive, and deposit profits from their illegal activities.

57.    All Defendants can easily and quickly transfer or conceal their funds in their use of payment and financial accounts to avoid detection and liability in the event their efforts are discovered, or Dolls Kill obtains monetary award.

58.    All Defendants understand that their ability to profit through anonymous internet stores is enhanced as their numbers increase, even though they may not all engage in direct communication or coordination.

59.    Defendants' business names, associated payment accounts, and any other seller alias or e-commerce stores used in connection with the sale of infringements of Dolls Kill's intellectual property rights are essential components of Defendants' online activities and are one of the means by which Defendants further their infringement scheme and cause harm to Dolls Kill.

60.     Defendants are using infringements of Dolls Kill's intellectual property rights to drive Internet consumer traffic to their e-commerce stores and decreasing the size and value of Dolls Kill's legitimate marketplace and intellectual property rights at Dolls Kill's expense.

61.     Defendants, through the sale and offer to sell infringing products, are directly and unfairly competing with Dolls Kill's economic interests in the state of Illinois and causing Dolls Kill harm and damage within this jurisdiction.

62.     Upon information and belief, at all times relevant hereto, Defendants had actual or constructive knowledge of Dolls Kill's intellectual property rights, including Dolls Kill's exclusive right to use and license such intellectual property rights.

**FACTS RELATED TO PLAINTIFF'S SUBJECT DESIGNS AND PHOTOGRAPHS**

63.     Dolls Kill owns all rights in the Subject Designs depicted in **Exhibit A**. Dolls Kill also owns all rights, title, and interest in the Subject Photographs depicted in **Exhibit D**.

64.     Dolls Kill complied in all respects with the Copyright Act, 17 U.S.C. § 101, *et. seq.*, and is the sole owner of the exclusive rights, title, interests, and privileges in and to the Subject Designs.

65.     Prior to the acts complained of herein, Dolls Kill widely publicly displayed and disseminated the Subject Designs including without limitation on Dolls Kill's website *www.DollsKill.com* and its various social media platforms under the name "Dolls Kill".

66.     Genuine goods bearing Dolls Kill's copyrighted designs are sold by Dolls Kill and its authorized distributors.

67.     Defendants, and each of them, have willfully copied, reproduced, distributed, sold, and/or offered for sale Dolls Kill's Subject Designs for financial benefit by, without limitation,

reproducing the Subject Design online and/or products bearing copies of the Designs for commercial benefit, including without limitation, through Defendant Internet Stores.

68.     Dolls Kill has identified numerous e-commerce stores, including the Defendant Internet stores, that offer for sale and/or are selling Infringing Products to consumers in this Judicial District and throughout the United States. E-commerce stores, including through stores like Defendants, have resulted in a sharp increase in the shipment of unauthorized products into the United States.

69.     Plaintiff's products are modern, visually pleasing to consumers, and have become popular to consumers within the watersport community, resulting in thousands of sales throughout the United States.

70.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing infringers to use untraceable identifiers, such as false names and addresses, when registering with e-commerce platforms.

71.     Defendants concurrently employ and benefits from substantially similar marketing and advertising strategies. For example, Defendants facilitate sales by designing the e-commerce stores operating the Defendant Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. Defendant internet stores often include content and images that make it difficult for consumers to distinguish such stores from authorized retailers by using identical and stolen videos and images from authorized retailers' websites.

72.     Dolls Kill has not licensed or authorized the Defendants to use the Subject Designs or Subject Photographs nor are Defendants authorized retailers of such.

73. Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Infringing Products. Such registration patterns are one of the many tactics used by Defendants to conceal their identities and evade takedown. This tactic evidences coordination and a common series of transactions and occurrences underlying the claims alleged herein.

74. Defendants maintain off-shore accounts and regularly move funds from their financial accounts to off-shore bank accounts outside this Court's jurisdiction to avoid payment of any monetary judgment awarded to Dolls Kill.

75. On information and belief, Defendants are an interrelated group of infringers working in active concert to knowingly and willfully make, use, offer for sale, sell, and/or import into the United States for subsequent sale or use Infringing Products in the same series of transactions or occurrences.

76. Defendants are using identical copies of Dolls Kill's Designs. True and correct copies and screen captures of examples of Defendants' unauthorized use are depicted in **Exhibit B** ("Infringing Products"). These copies and screen captures represent non-inclusive exemplars of the Infringing Products.

77. Defendants advertise their e-commerce stores to the consuming public via e-commerce stores on Internet marketplace websites. True and correct screen captures of the Defendant Internet Stores offering Infringing Products for sale and displaying Offending Advertisements are shown in **Exhibit C** attached hereto.

78. Defendants also advertise the Infringing Products or with Dolls Kill's original Subject Photographs. True and correct copies and screen captures of examples of the Defendants'

unauthorized use of the Subject Photographs are depicted in **Exhibit D** and **Exhibit C** attached hereto.

79.     In advertising their stores and products, Defendants improperly and unlawfully use the Subject Designs and Subject Photographs without Dolls Kill's permission.

80.     By their actions, Defendants are contributing to the creation and maintenance of an illegal marketplace operating in parallel to the legitimate marketplace for Dolls Kill's genuine goods.

81.     Defendants are causing individual, concurrent and indivisible harm to Dolls Kill and the consuming public by (i) depriving Dolls Kill and other third parties of their right to fairly compete for space within search engine results and reducing the visibility of Dolls Kill's genuine goods on the World Wide Web, (ii) causing an overall degradation of the value associated with the images, and (iii) increasing Dolls Kill's overall cost to market its goods and educate consumers via the Internet.

82.     As a result, Defendants are defrauding Dolls Kill and the consuming public for Defendants' own benefit. Upon information and belief, Defendants facilitate sales by designing the Defendant Internet Stores so that they appear unknowing to customers to be authorized online retailer, outlet stores, or wholesalers selling genuine Subject Design. They also accomplish this through the unauthorized and infringing use of the Subject Photographs. Many of the Defendant Internet Stores look sophisticated and accept payment in US Dollars via credit or debit cards. Defendant Internet Stores include design elements that make it very difficult for consumers to distinguish such infringing sites from authorized seller websites.

83.     Upon information and belief, at all times relevant hereto, Defendants had full knowledge of Dolls Kill's ownership of the Subject Designs and Subject Photographs, including

its exclusive right to use and license such Subject Designs and Subject Photographs, through Dolls Kill's numerous online profiles and features, online publications and press featuring Dolls Kill's work, Dolls Kill's social media accounts, and/or through viewing the Subject Designs and Subject Photographs on third-party websites (e.g., Tumblr, Pinterest, internet search engines, etc.).

84. Defendants' use of the Subject Designs and Subject Photographs, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of the Infringing Products, is without Dolls Kill's consent or authorization.

85. Defendants are engaging in the above-described infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Dolls Kill's rights and for the purpose of trading on Dolls Kill's intellectual property and reputation.

86. Dolls Kill has not in any way authorized Defendants, or any of them, to copy, reproduce, duplicate, disseminate, distribute, or create derivative works of the Subject Designs and Subject Photographs.

87. If Defendants' intentional infringing activities are not preliminarily and permanently enjoined, Dolls Kill and the consuming public will continue to be harmed.

88. Defendants' infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during and after the time of purchase.

89. Defendants are likely to transfer or conceal their assets to avoid payment of any monetary judgment awarded to Dolls Kill.

90. Dolls Kill is suffering irreparable injury and has suffered substantial damages because of Defendants' unauthorized and infringing activities and their wrongful use of Dolls Kill's intellectual property rights.

91.     Dolls Kill should not have competition from Defendants because Plaintiff never authorized Defendants to use Dolls Kill's Subject Designs or Subject Photographs.

92.     Dolls Kill has no adequate remedy at law.

### FIRST CLAIM FOR RELIEF

(For Copyright Infringement – Against all Defendants, and Each)

93.      Dolls Kill repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

94.     Dolls Kill has complied in all respects with the Copyright Act of the United States and other laws governing copyright and secured the exclusive rights and privileges in and to the copyrights at issue.

95.     Under 17 U.S.C. § 106, Dolls Kill has the exclusive rights and privileges to reproduce, prepare derivate works, distribute copies, and import copies into the United States of the copyrighted Subject Designs and Subject Photographs. The Defendants only infringing on Doll Kill's rights in the Subject Design are identified as "SD" under the "claims" column. The Defendants infringing on both Dolls Kill's rights in the Subject Photograph and Subject Design are identified with an "A" in the "claims" column.

96.     Dolls Kill alleges that Defendants, and each of them, infringed Dolls Kill's exclusive copyrights by creating infringing derivative works, copying, displaying, and/or distributing works to the public based upon Dolls Kill's Subject Designs in violation of 17 U.S.C. § 106, as seen, without limitation, in the screen captures shown in **Exhibits B, C, and D.**

97.     Dolls Kill alleges that Defendants accessed the Subject Design and Subject Photographs through its widespread distribution via Dolls Kill public online profiles and other displays through authorized retailers. Further, access cannot be disputed given the identical

advertisements and designs and the identicalness of the works at issue. Thus, the identicalness between the works is probative of copying and proves that independent creation is unlikely.

98.     Dolls Kill alleges that Defendants, and each of them, infringed Dolls Kill's exclusive copyrights by creating infringing derivative works, copying, displaying, and/or distributing works to the public based upon Dolls Kill's Subject Photographs in violation of 17 U.S.C. § 106, as seen, without limitation, in the screen captures shown in **Exhibits C and D.**

99.     Due to Defendants' sale of Infringing Products as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Dolls Kill's rights in the Subject Designs and Subject Photographs. As such, Dolls Kill is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of its rights in the Subject Designs and Subject Photographs in an amount to be established at trial.

100.     Defendants' conduct constitutes willful and direct copyright infringement. The similarities between the Subject Designs and Infringing Products and the similarities between the Subject Photographs and images used in the Offending Advertisements further proves the willful and direct infringement by Defendants.

101.     On information and belief, Defendants routinely and intentionally infringe the intellectual property rights of others, including but not limited to, acting with willful blindness and/or reckless disregard.

102.     Due to Defendants', and each of their acts of infringement, Dolls Kill has actually and proximately suffered actual, general, and special damages in an amount to be established at trial under 17 U.S.C. § 504(b) and (c).

103.     The harm caused to Dolls Kill is irreparable.

104.    Dolls Kill is entitled to temporary and permanent injunctive relief from Defendants' willful infringement.

105.    Dolls Kill complied with registration requirements for the Subject Designs and Subject Photographs before the commission of the infringement at issue and on that basis seeks statutory damages in an amount up to $150,000.00 per designs per the Copyright Act.

106.    Dolls Kill is informed and believes and thereon alleges that Defendants, and each of their, conduct as alleged herein was willful, reckless, and/or with knowledge, subjecting Defendants, and each of them, to enhanced statutory damages, claims for costs and attorneys' fees, and/or a preclusion from deducting certain costs when calculating disgorgeable profits.

## SECOND CLAIM FOR RELIEF

(For Vicarious and/or Contributory Copyright Infringement – Against all Defendants, and Each)

107.    Dolls Kill repeats, re-alleges, and incorporates herein by reference as though fully set forth, the allegations contained in the preceding paragraphs of this Complaint.

108.    On information and belief, Dolls Kill alleges that Defendants knowingly induced, participated in, aided and abetted in and profited from the illegal reproduction and distribution of the Subject Designs and Subject Photographs as alleged hereinabove. Such conduct included, without limitation, creating derivative works, creating products which use Dolls Kill's Subject Designs and Subject Photographs, and/or selling such derivative works and products and that that Defendants knew, or should have known, were not authorized to be published by Defendants.

109.    On information and belief, Dolls Kill alleges that Defendants, and each of them, are vicariously liable for the infringement alleged herein because they had the right and ability to supervise the infringing conduct and because they had a direct financial interest in the infringing conduct. Specifically, Defendants, and each of them, profited in connection with the Infringing

Products and Offending Advertisements, and were able to supervise the distribution, broadcast, and publication of the Infringing Products and Offending Advertisements.

110.    By reason of the Defendants', and each of their, acts of contributory and vicarious infringement as alleged above, Dolls Kill has suffered general and special damages in an amount to be established at trial.

111.    Due to Defendants' acts of copyright infringement as alleged herein, Defendants, and each of them, have obtained direct and indirect profits they would not otherwise have realized but for their infringement of Dolls Kill's rights in the Subject Design and Subject Photographs. As such, Dolls Kill is entitled to disgorgement of Defendants' profits directly and indirectly attributable to Defendants' infringement of Dolls Kill rights in the Subject Designs and Subject Photographs, in an amount to be established at trial.

112.    On information and belief, Dolls Kill alleges that Defendants, and each of them, have committed acts of copyright infringement, as alleged above, which were willful, intentional and malicious, which further subjects Defendants, and each of them, to liability for statutory damages under Section 504(c)(2) of the Copyright Act in the sum of up to $150,000.00 per infringement and/or a preclusion from asserting certain equitable and other defenses.

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment as follows:

## Against All Defendants

Wherefore, Plaintiff prays for judgment as follows against all Defendants and with respect to each claim for relief:

a.    Entry of temporary, preliminary, and permanent injunctions pursuant to 17 U.S.C.§ 502(a), and Federal Rule of Civil Procedure 65 enjoining Defendants, their agents, representatives,

servants, employees, affiliates, and/or all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell infringing goods; from infringing the Subject Designs and Subject Photographs; from using the Subject Designs and Subject Photographs, or any design similar thereto, in connection with the sale of any unauthorized goods; from using any reproduction, infringement, copy, or colorable imitation of the Subject Designs and Subject Photographs in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendants; and from otherwise unfairly competing with Plaintiff;

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, enjoining Defendants and all third parties with actual notice of the injunction issued by this Court from participating in, including providing financial services, technical services or other support to, Defendants in connection with the sale and distribution of non- genuine goods bearing and/or using the Subject Designs or Subject Photographs;

c.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiff's request, the applicable governing Internet marketplace website operators and/or administrators for the Seller IDs who are provided with notice of an injunction issued by this Court disable and/or cease facilitating access to the Seller IDs and any other alias seller identification names being used and/or controlled by Defendants to engage in the business of marketing, offering to sell, and/or selling foods bearing infringements of the Subject Designs or Subject Photographs;

d.      Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiff's request, any messaging service and Internet

marketplace website operators, administrators, registrar and/or top level domain (TLD) registry for the Seller IDs who are provided with notice of an injunction issued by this Court identify any e-mail address known to be associated with Defendants' respective Seller IDs.

e.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that upon Plaintiff's request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court permanently remove from the multiple platforms, which include, *inter alia*, a direct platform, group platform, seller product management platform, vendor product management platform, and brand registry platform, any and all listings and associated images of goods bearing infringements of the Subject Designs and Subject Photographs via the ecommerce stores operating under the Seller IDs, including but not limited to the listings and associated images identified by the Identification Numbers on **Schedule A** annexed hereto, and upon Plaintiff's request, any other listings and images of goods bearing infringements of the Work associated with any Identification Numbers linked to the same sellers or linked to any other alias seller identification names being used and/or controlled by Defendants to promote, offer for sale and/or sell goods bearing infringements of the Subject Design and Subject Photographs;

f.     Entry of an Order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and this Court's inherent authority that, upon Plaintiff's request, Defendants and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by this Court immediately cease fulfillment of and sequester all goods of each Defendant bearing the Work in its inventory, possession, custody, or control, and surrender those goods to Plaintiff;

g.     Entry of an Order requiring Defendants to correct any erroneous impression the consuming public may have derived concerning the nature, characteristics, or qualities of their

products, including without limitation, the placement of corrective advertising and providing written notice to the public;

      h.      Entry of an Order requiring Defendants to account to and pay Plaintiff his actual damages and Defendants' profits attributable to the infringement, or, at Plaintiff's election, statutory damages, as provided in 17 U.S.C. § 504;

      i.      Entry of an award, pursuant to 17 U.S.C. § 505, of Plaintiff's costs, disbursements, and reasonable attorneys' fees, associated with bringing this lawsuit;

      j.      That Plaintiff be awarded its costs and attorney's fees to the extent they are available under the Copyright Act U.S.C. §§ 505, 1203, *et seq.*

      k.      Entry of an Order that, upon Plaintiff's request, Defendants and any financial institutions, payment processors, banks, escrow services, money transmitters, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the Seller IDs, or other alias seller identification or ecommerce store names used by Defendants presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s) and remain restrained until such funds are surrendered to Plaintiff in partial satisfaction of the monetary judgment entered herein;

      l.      That a trust be entered over all Infringing Products, and all profits realized through the sales and distribution of said products;

      m.      That Plaintiff be awarded pre-judgment interest as allowed by law;

      n.      That Plaintiff be awarded the costs of this action; and

o.      That Plaintiff be awarded such further legal and equitable relief as the Court deems

proper.

Plaintiff demands a jury trial on all issues so triable pursuant to Fed. R. Civ. P. 38 and the

7th Amendment to the United States Constitution.

Respectfully submitted,

Dated: March 7, 2024          By:     */s/ Mackenzie Paladino*
                                      Mackenzie Paladino, Esq. (Bar No. 6342560)
                                      DONIGER / BURROUGHS
                                      247 Water Street, First Floor
                                      New York, New York 10038
                                      mpaladino@donigerlawfirm.com
                                      *Attorney for Plaintiff*